## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA
## EASTERN DIVISION

| | |
|---|---|
| ANTHONY BANGERT, *individually and on behalf of all others similarly situated*, | Case No.: _____ |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| LEE INTERPRISES, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Anthony Bangert ("Plaintiff"), individually and on behalf of all others similarly situated ("Class Members"), brings this action against Defendant Lee Enterprises, Inc. ("Defendant"), alleging as follows upon Plaintiff's personal knowledge, information and belief, and investigation of counsel.

### I.    INTRODUCTION

1.    This action arises from Defendant's failure to properly secure and safeguard Plaintiff's and thousands of Class Members' sensitive personal identifying information[1] ("PII"), which as a result, is now in the hands of cybercriminals and published on the dark web.

2.    Due to Defendant's deficient data security, hackers accessed Defendant's network servers and systems and exfiltrated Plaintiff's and Class Members' PII stored therein, including their names and Social Security numbers (collectively, "Private Information"), causing widespread

---

[1] The Federal Trade Commission ("FTC") defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth. . . .." 17 C.F.R. § 248.201(b)(8).

injuries and damages to Plaintiff and Class Members ("Data Breach").

3.      Defendant "is a leading provider of local news and information, and a major platform for advertising, with daily newspapers, rapidly-growing digital products, marketing services, innovative technology and nearly 350 weekly and specialty publications serving 72 markets in 25 states."[2]

4.      Plaintiff and Class Members are current and former employees of Defendant or its related entities who, as a condition and in exchange of employment from Defendant, were required to and did indirectly entrust Defendant with their confidential, non-public Private Information by providing it to Defendant or its related entities so they could obtain employment. Defendant collected, used, and maintained Plaintiff's and Class Members' Private Information to facilitate its operations, and stored and transmitted this Private Information on its network servers and systems.

5.      Businesses that handle individuals' Private Information like Defendant owe the individuals to whom that information relates a duty to adopt reasonable measures to protect it from disclosure to unauthorized third parties, and to keep it safe and confidential. This duty arises under contract, statutory and common law, federal and state law and regulation, industry standards, and representations made to Plaintiff and Class Members, and because it is foreseeable that the exposure of Private Information to unauthorized persons—especially hackers with nefarious intentions—will harm the affected individuals, including but not limited to the invasion of their private financial matters.

6.      Defendant breached its duties owed to Plaintiff and Class Members by failing to safeguard the Private Information it collected from them and maintained, including by failing to implement industry standards for data security to protect the sensitive data against cyberattacks,

---

[2] *See* https://www.lee.net/.

which allowed hackers to access and exfiltrate hundreds of thousands of individuals' Private Information from Defendant's care.

7.    According to Defendant's Notice of Data Breach ("Notice Letter") to consumers about the Data Breach, "On May 28, 2025, [Defendant] learned that personal information of certain employees was potentially accessed without authorization." Employee's Private Information, including names and Social Security numbers, were accessed in the Data Breach.

8.    Upon information and belief, the potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known risk to Defendant, and thus, Defendant knew failing to take reasonable steps to secure the Private Information left it in a dangerous condition.

9.    Despite knowing the risks, Defendant failed to adequately protect Plaintiff's and Class Members' Private Information—and failed to even encrypt or redact this highly sensitive data.  This unencrypted, unredacted Private Information was compromised due to Defendant's negligent and/or careless acts and omissions and its utter failure to protect Plaintiff's and Class Members' sensitive data.

10.    Defendant breached its duties and obligations by failing in one or more of the following ways: (a) to design, implement, monitor, and maintain reasonable network safeguards against foreseeable threats; (b) to design, implement, and maintain reasonable data retention policies; (c) to adequately train or oversee staff and service providers regarding data security; (d) to comply with industry-standard data security practices; (e) to warn Plaintiff and Class Members of Defendant's inadequate data security practices; (f) to encrypt or adequately encrypt the Private Information it collected and stored; (g) to recognize or detect that its network had been compromised and accessed in a timely manner to mitigate the harm; (h) to utilize widely available software able to detect and prevent this type of attack; and (i) to otherwise secure the Private

Information using reasonable and effective data security procedures free of foreseeable vulnerabilities and breaches.

11.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality and security of their Private Information. In providing their Private Information to Defendant, Plaintiff and Class Members reasonably expected this sophisticated business entity to keep their Private Information confidential and security maintained, to use it only for business purposes, and to disclose it only as authorized. Defendant failed to do so, causing the unauthorized disclosure of Plaintiff and Class Members' Private Information in the Data Breach.

12.    Hackers targeted and obtained Plaintiff's and Class Members' Private Information from Defendant because of the data's value in exploiting and stealing Plaintiff's and Class Members' identities. The present and continuing risk to Plaintiff and Class Members as victims of the Data Breach will remain for their respective lifetimes.

13.    The harm resulting from a cyberattack like this Data Breach manifests in numerous ways including identity theft and financial fraud, and the exposure of an individual's Private Information due to breach ensures that he or she will be at a substantially increased and certainly impending risk of identity theft crimes compared to the rest of the population, potentially for the rest of his or her life. Mitigating that risk, to the extent even possible, requires individuals to devote significant time and money to closely monitor their credit, financial accounts, and email accounts, and take several additional prophylactic measures.

14.    The risk of identity theft caused by this Data Breach is impending and has materialized, as Plaintiff's and Class Members' Private Information was targeted, accessed, and misused by cybercriminals that will disseminate the Private Information to nefarious actors on the dark web.

15.     As a result of Defendant's deficient cybersecurity and the consequential Data Breach, Plaintiff and Class Members have suffered and will continue to suffer concrete injuries in fact including, *inter alia*, (a) actual and/or materialized and imminent risk of identity theft and fraud; (b) financial costs incurred due to actual identity theft; (c) lost time and productivity dealing with actual identity theft; (d) financial costs incurred mitigating the materialized risk and imminent threat of identity theft; (e) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft; (f) deprivation of value of their Private Information; (g) loss of privacy; (h) emotional distress including anxiety and stress in with dealing with the Data Breach; (i) loss of the benefit of their bargains with Defendant; and (j) the continued risk to their sensitive Private Information, which remains in Defendant's possession and subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect the confidential data it collects and maintains.

16.     To recover for these harms, Plaintiff, individually and on behalf of the Class as defined herein, brings claims for negligence/negligence *per se*, breach of third-party beneficiary contract, invasion of privacy/intrusion upon seclusion, and unjust enrichment, to address Defendant's inadequate safeguarding of Plaintiff's and Class Members' sensitive Private Information.

17.     Plaintiff, individually and on behalf of putative Class Members, seeks compensatory, consequential, nominal, and punitive damages, attorneys' fees and costs, declaratory judgment, and injunctive relief requiring Defendant to (a) disclose, expeditiously, the full nature of the Data Breach and the types of Private Information exposed; (b) implement improved data security practices to reasonably guard against future breaches of Private Information in Defendant's possession; and (c) provide, at Defendant's own expense, all impacted Data Breach

victims with lifetime credit monitoring and identity theft protection services.

## II.    PARTIES

18.    Plaintiff is a citizen and resident of Wisconsin.

19.    Defendant is Iowa corporation with its headquarters and principal place of business located at 4600 E 53rd St, Davenport, Iowa, 52807

## III.    JURISDICTION AND VENUE

20.    The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the amount in controversy exceeds $5 million, exclusive of interest and costs, the number of Class Members is over 100, and at least one Class Member is a citizen of a state that is diverse from Defendant's citizenship, namely, all Plaintiff. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

21.    This Court has personal jurisdiction over Defendant because its principal place of business is in Iowa, and because it engages in substantial and continuous activities and conduct business in this state.

22.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Defendant's principal place of business is located in this District, and a substantial part of the events giving rise to this action and Plaintiff's claims occurred in this District.

## IV.    FACTUAL ALLEGATIONS

### A. Defendant Collects and Maintains Private Information.

24.    To facilitate Defendant's operational and financial functions, including hiring, managing personnel, and processing payroll, Defendant and its related entities collects and maintains its employees Private Information.

25.    Plaintiff and Class Members are current and former employees of Defendant or its related entities who, as a condition of and in exchange for receiving employment from Defendant,

were required to entrust Defendant with their sensitive Private Information including their names, Social Security numbers, and other Private Information.

26.    Defendant derived economic benefits from collecting Plaintiff's and Class Members' Private Information. Without the required submission of Private Information, Defendant could not perform its revenue-generating operations, including contracting with its employees, customers, furnishing its products and services, and billing its customers for products and services provided.

27.    At all relevant times, Defendant knew it was using its networks to store and transmit Plaintiff's and Class Members' valuable, sensitive Private Information and that as a result, its systems would be attractive targets for cybercriminals.

28.    Defendant also knew that any breach of its network servers and systems and exposure of the data stored therein would result in the increased risk of identity theft and fraud for the thousands of individuals whose Private Information was compromised, as well as intrusion into their private personal and financial matters.

29.    In exchange for receiving Plaintiff's and Class Members' Private Information, Defendant promised to safeguard the sensitive, confidential data and to only use it for authorized and legitimate purposes.

30.    Upon information and belief, Defendant made promises and representations to its employees for the benefit if Plaintiff and Class Members that the Private Information collected from them, including that of Plaintiff and Class Members, would be kept safe and confidential, that the privacy of that information would be maintained, and that Defendant would delete any sensitive information after it was no longer required to maintain it.

31.    Employees in general value the confidentiality of their Private Information and

demand security to safeguard it.  For their part, Plaintiff and Class Members have taken reasonable steps to maintain their Private Information in confidence and privacy.

32.    Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

33.    Plaintiff and Class Members relied on Defendant's sophistication to keep their Private Information confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information.

34.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of its promises to safeguard that information.

35.    Defendant derived a substantial economic benefit from collecting Plaintiff's and Class Members' Private Information. Without the required submission of Private Information, Defendant could not contract with its employees, customers, furnish its products and services, or bill its customers.

36.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties to Plaintiff and Class Members, and knew or should have known that it was responsible for protecting their Private Information from unauthorized disclosure.  Defendant failed to do so, causing this Data Breach.

**B. Defendant Failed to Adequately Safeguard Plaintiff's and Class Members' Private Information, causing the Data Breach.**

37.    Defendant collected and maintained its current and former employees' Private Information on its computer information technology systems and networks, including when the Data Breach occurred.

38.    The information held by Defendant at the time of the Data Breach included the

unencrypted Private Information of Plaintiff and Class Members.

39.     On or about June 3, 2025, Defendant began sending Notice Letters to Plaintiff and Class Members, advising in pertinent part, that Private Information of certain employees were accessed without authorization.

40.     Omitted from the Notice Letters are crucial details like the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again. To date, these critical facts have not been explained or clarified to Plaintiff and Class Members, who retain a vested interest in ensuring that their Private Information is protected.

41.     Thus, Defendant's purported disclosure amounts to no real disclosure at all, as it fails to inform Plaintiff and Class Members of the Data Breach's critical facts with any degree of specificity.  Without these details, Plaintiff's and Class Members' ability to mitigate the harms resulting from the Data Breach was and is severely diminished.

42.     Defendant could have prevented this Data Breach by properly securing and encrypting the files and file servers containing Plaintiff's and Class Members' Private Information and training its employees on standard cybersecurity practices.

43.     For example, if Defendant had implemented industry standard logging, monitoring, and alerting systems—basic technical safeguards that any PII-collecting company is expected to employ—then cybercriminals would not have been able to perpetrate prolonged malicious activity in Defendant's network systems without alarm bells going off, including the reconnaissance necessary to identify where Defendant stored PII, installation of malware or other methods of establishing persistence and creating a path to exfiltrate data, staging data in preparation for exfiltration, and then exfiltrating that data outside of Defendant's system without being caught.

44.     Defendant would have recognized the malicious activities detailed in the preceding paragraph if it bothered to implement basic monitoring and detection systems, which then would have stopped the Data Breach or greatly reduced its impact.

45.     Defendant did not use reasonable security procedures and practices appropriate to the sensitive and confidential nature of Plaintiff's and Class Members' Private Information it collected and maintained, such as encrypting files containing Private Information or deleting Private Information from network systems when it is no longer needed, which caused that Private Information's unauthorized access and exfiltration in the Data Breach.

46.     Cybercriminals typically gains initial access to a targeted network through common techniques like phishing emails or exploiting known vulnerabilities in internet-facing systems.[3] Phishing is a tactic that uses social engineering to send emails containing malicious attachments to targeted organizations or individuals,[4] and relies on user execution (like opening an email or downloading an attachment) to gain access.[5]

47.     CISA recommends rudimentary actions that businesses like Defendant should take immediately to mitigate cyber threats from cybercriminals: (a) installing updates for operating systems, software, and firmware as soon as they are released; (b) requiring phishing-resistant multi-factor authentication ("MFA") (i.e., non-SMS text based) for as many services as possible; and (c) training users to recognize and report phishing attempts.[6]

48.     Upon information and belief, Defendant failed to take these actions. Had Defendant

---

[3] #StopRansomware: RansomHub Ransomware, CISA (Aug. 29, 2024), available at https://www.cisa.gov/news-events/cybersecurity-advisories/aa24-242a.

[4] *See* Phishing, MITRE ATT&CK (March 1, 2024), available at https://attack.mitre.org/versions/v15/techniques/T1566/.

[5] *See* Phishing, MITRE ATT&CK (April 12, 2024), available at https://attack.mitre.org/versions/v15/techniques/T1204/.

[6] #StopRansomware: RansomHub Ransomware, CISA (Aug. 29, 2024), available at https://www.cisa.gov/news-events/cybersecurity-advisories/aa24-242a.

done so, the Data Breach would not have occurred, or would have at least been mitigated.

49.     As a result of Defendant's failures, Plaintiff's and Class Members' Private Information was stolen in the Data Breach when cybercriminals accessed and acquired files in Defendant's computer systems storing that sensitive data in unencrypted form.

50.     Defendant's tortious conduct and breach of contractual obligations, as detailed herein, are evidenced by its failure to recognize the Data Breach until cybercriminals had already accessed Plaintiff's and Class Members' Private Information, meaning Defendant had no effective means in place to detect and prevent attempted cyberattacks.

## C. Defendant Knew or Should Have Known of the Risk of a Cyber Attack Because Businesses in Possession of Private Information are Particularly Suspectable.

51.     Defendant's negligence, including its gross negligence, in failing to safeguard Plaintiff's and Class Members' Private Information is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

52.     Private Information of the kind accessed in the Data Breach is of great value to cybercriminals as it can be used for a variety of unlawful and nefarious purposes, including ransomware, fraudulent misuse, and sale on the internet black market known as the dark web.

53.     Private Information can also be used to distinguish, identify, or trace an individual's identity, such as his or her name, Social Security number, and financial records. This may be accomplished alone, or in combination with other personal or identifying information connected or linked to an individual such as his or her birthdate, birthplace, and mother's maiden name.

54.     Data thieves regularly target entities that store PII like Defendant due to the highly sensitive information they maintain.  Defendant knew and understood that Plaintiff's and Class Members' Private Information is valuable and highly sought after by criminal parties who seek to illegally monetize it through unauthorized access.

55.     Cyberattacks against institutions such as Defendant are targeted and frequent. According to Contrast Security's 2023 report, "Cyber Bank Heists: Threats to the financial sector," "[o]ver the past year, attacks have included banking trojans, ransomware, account takeover, theft of client data and cybercrime cartels deploying 'trojanized' finance apps to deliver malware in spear-phishing campaigns."[7]

56.     According to the Identity Theft Resource Center's report covering the year 2021, "the overall number of data compromises (1,862) is up more than 68 percent compared to 2020. The new record number of data compromises is 23 percent over the previous all-time high (1,506) set in 2017. The number of data events that involved sensitive information (Ex: Social Security numbers) increased slightly compared to 2020 (83 percent vs. 80 percent)."[8]

57.     The increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant itself. According to IBM's 2022 report, "[f]or 83% of companies, it's not if a data breach will happen, but when."[9]

58.     Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect Plaintiff's and Class Members' Private Information from being compromised in this Data Breach.

59.     As a national service provider in possession of millions of consumers' Private Information, Defendant knew, or should have known, the importance of safeguarding the Private

---

[7] Tom Kellermann, *Cyber Bank Heists: Threats to the financial sector*, at 5, CONTRAST SECURITY https://www.contrastsecurity.com/hubfs/Cyber%20Bank%20Heists%20Report%2020 23.pdf.

[8] *See* Identity Theft Resource Center, *2021 Annual Data Breach Report Sets New Record for Number of Compromises*, ITRC (Jan.24,    2022), https://www.idtheftcenter.org/post/identity-theft-resource-center-2021-annual-data-breach-report-sets-new-record-for-number-of-compromises.

[9] IBM, *Cost of a data breach 2022: A million-dollar race to detect and respond*, https://www.ibm.com/reports/data-breach.

Information entrusted to it by Plaintiff and Class Members and of the foreseeable consequences they would suffer if Defendant's data security systems were breached. Such consequences include the significant costs imposed on Plaintiff and Class Members due to the unauthorized exposure of their Private Information to criminal actors. Nevertheless, Defendant failed to take adequate cybersecurity measures to prevent the Data Breach or the foreseeable injuries it caused.

60.     Given the nature of the Data Breach, it was foreseeable that Plaintiff's and Class Members' Private Information compromised therein would be targeted by hackers and cybercriminals for use in variety of different injurious ways. Indeed, the cybercriminals who possess Plaintiff's and Class Members' Private Information can easily obtain their tax returns or open fraudulent credit card accounts in Plaintiff's and Class Members' names.

61.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network server(s) and systems, amounting to millions of individuals' detailed Private Information, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

62.     Plaintiff and Class Members were the foreseeable and probable victims of Defendant's inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing Private Information and the critical importance of providing adequate security for that data.

63.     The breadth of data compromised in the Data Breach makes the information particularly valuable to criminals and leaves Plaintiff and Class Members especially vulnerable to identity theft, tax fraud, medical fraud, credit and bank fraud, and more.

**D. Defendant is Required, But Failed, to Comply with FTC Rules and Guidance.**

64.     The FTC has promulgated numerous guides that highlight the importance of

13

implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

65.    In 2016 the FTC updated its publication, *Protecting Personal Information: A Guide for Business*,[10] which established cyber-security guidelines for businesses like Defendant. These guidelines note that businesses should protect the Private Information that they keep; properly dispose of Private Information that is no longer needed; encrypt Private Information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

66.    The FTC's guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[11]

67.    The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

68.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect third parties' confidential data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45

---

[10] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (2016),https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.
[11] *Id.*

*et seq.* Orders resulting from these actions further clarify the measures business like Defendant must undertake to meet their data security obligations.

69.    Such FTC enforcement actions include those against businesses that fail to adequately protect consumer data, like Defendant here. *See, e.g.*, *In the Matter of LabMD, Inc.*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

70.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses like Defendant of failing to use reasonable measures to protect Private Information they collect and maintain from consumers. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

71.    The FTC has also recognized that personal data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis and profit."[12]

72.    Defendant failed to properly implement basic data security practices, in violation of its duties under the FTC Act.

73.    Defendant's failure to comply with industry standards or employ reasonable and appropriate measures to protect against unauthorized access to and disclosure of Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5

---

[12] Statement of FTC Commissioner Pamela Jones Harbour (Remarks Before FTC Exploring Privacy Roundtable), http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf.

of the FTC Act.

**E. Defendant Failed to Comply with Industry Standards.**

74.    A number of published industry and national best practices are widely used as a go-to resource when developing an institution's cybersecurity standards.

75.    The Center for Internet Security's (CIS) Critical Security Controls (CSC) recommends certain best practices to adequately secure data and prevent cybersecurity attacks, including Critical Security Controls of Inventory and Control of Enterprise Assets, Inventory and Control of Software Assets, Data Protection, Secure Configuration of Enterprise Assets and Software, Account Management, Access Control Management, Continuous Vulnerability Management, Audit Log Management, Email and Web Browser Protections, Malware Defenses, Data Recovery, Network Infrastructure Management, Network Monitoring and Defense, Security Awareness and Skills Training, Service Provider Management, Application Software Security, Incident Response Management, and Penetration Testing.[13]

76.    The National Institute of Standards and Technology ("NIST") also recommends certain practices to safeguard systems, such as the following:

   a.    Control who logs on to your network and uses your computers and other devices.

   b.    Use security software to protect data.

   c.    Encrypt sensitive data, at rest and in transit.

   d.    Conduct regular backups of data.

   e.    Update security software regularly, automating those updates if possible.

   f.    Have formal policies for safely disposing of electronic files and old devices.

---

[13]   *See* Rapid7, "CIS Top 18 Critical Security Controls Solutions," available at https://www.rapid7.com/solutions/compliance/critical-controls/ (last acc Jun. 12, 2025).

g. Train everyone who uses your computers, devices, and network about cybersecurity. You can help employees understand their personal risk in addition to their crucial role in the workplace.

77. Further still, CISA makes specific recommendations to organizations to guard against cybersecurity attacks, including (a) reducing the likelihood of a damaging cyber intrusion by validating that "remote access to the organization's network and privileged or administrative access requires multi-factor authentication, [e]nsur[ing] that software is up to date, prioritizing updates that address known exploited vulnerabilities identified by CISA[,] [c]onfirm[ing] that the organization's IT personnel have disabled all ports and protocols that are not essential for business purposes," and other steps; (b) taking steps to quickly detect a potential intrusion, including "[e]nsur[ing] that cybersecurity/IT personnel are focused on identifying and quickly assessing any unexpected or unusual network behavior [and] [e]nabl[ing] logging in order to better investigate issues or events[;] [c]onfirm[ing] that the organization's entire network is protected by antivirus/antimalware software and that signatures in these tools are updated," and (c) "[e]nsur[ing] that the organization is prepared to respond if an intrusion occurs," and other steps.[14]

78. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including by failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established frameworks for reasonable cybersecurity readiness, and by failing to comply with other industry standards for protecting

---

[14] CISA, *Shields Up: Guidance for Organizations*, https://www.cisa.gov/shields-guidance-organizations (last accessed Jun. 12, 2025).

Plaintiff's and Class Members' Private Information, resulting in the Data Breach.

**F. Defendant Owed Plaintiff and Class Members a Common Law Duty to Safeguard their Private Information.**

79.    In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.  Defendant's duty owed to Plaintiff and Class Members obligated it to provide reasonable data security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected Plaintiff's and Class Members' Private Information.

80.    Defendant owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the Private Information in its possession, including adequately training its employees and others who accessed Private Information within its computer systems on how to adequately protect Private Information.

81.    Defendant owed a duty to Plaintiff and Class Members to implement processes that would detect a compromise of Private Information in a timely manner.

82.    Defendant owed a duty to Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion.

83.    Defendant owed a duty to Plaintiff and Class Members to disclose in a timely and accurate manner when and how the Data Breach occurred.

84.    Defendant owed these duties of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

85.    Defendant tortiously failed to take the precautions required to safeguard and protect Plaintiff's and Class Members' Private Information from unauthorized disclosure. Defendant's

actions and omissions represent a flagrant disregard of Plaintiff's and Class Members' rights.

**G. Plaintiff and Class Members Suffered Common Injuries and Damages due to Defendant's Deficient Data Security and the Resulting Data Breach.**

86.    Defendant's failure to implement or maintain adequate data security measures for Plaintiff's and Class Members' Private Information directly and proximately caused injuries to Plaintiff and Class Members by the resulting disclosure of their Private Information to a criminal ransomware group in the Data Breach.

87.    Defendant's conduct, which allowed the Data Breach to occur, caused Plaintiff and Class Members significant injuries and harm in several ways.  Plaintiff and Class Members must immediately devote time, energy, and money to (a) closely monitor their medical statements, bills, records, and credit and financial accounts; (b) change login and password information on any sensitive account even more frequently than they already do; (c) more carefully screen and scrutinize phone calls, emails, and other communications to ensure that they are not being targeted in a social engineering or spear phishing attack; and (d) search for suitable identity theft protection and credit monitoring services, and pay to procure them.

88.    The unencrypted Private Information of Plaintiff and Class Members compromised in the Data Breach will end up for sale on the dark web because that is the *modus operandi* of hackers. In addition, unencrypted PII may fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of Plaintiff and Class Members. Unauthorized actors with bad intentions can now easily access Plaintiff's and Class Members' Private Information.

89.    The ramifications of Defendant's failure to keep the Private Information of Plaintiff and Class Members secure are long lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

90.     Plaintiff and Class Members are also at a continued risk because their Private Information remains in Defendant's systems, which have already been shown to be susceptible to compromise and are subject to further attack so long as Defendant fails to undertake the necessary and appropriate security and training measures to protect its consumers' Private Information.

91.     As a result of Defendant's ineffective and inadequate data security practices, the consequential Data Breach, and the foreseeable outcome of Plaintiff's and Class Members' Private Information ending up in criminals' possession, Plaintiff and Class Members have suffered and will continue to suffer the following injuries and damages, without limitation:  (a) invasion of privacy; (b) financial costs incurred mitigating the materialized risk and imminent threat of identity theft; (c) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft; (d) financial costs incurred due to actual identity theft; (e) loss of time incurred due to actual identity theft; (f) deprivation of value of their Private Information; (g) loss of the benefit of their bargain with Defendant; (h) emotional distress including anxiety and stress in dealing with the Data Breach's aftermath; (i) an increase in spam and scam robocalls, emails, and texts; and (j) the continued risk to their sensitive Private Information, which remains in Defendant's possession and subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect it.

### *Present and Ongoing Risk of Identity Theft*

92.     Given the publication of their Private Information on the dark web and the fraudulent misuse of such Private Information that has already taken place, as set forth in greater detail below, Plaintiff and Class Members are at a heightened risk of identity theft for years to come because of the Data Breach.

93.     The FTC defines identity theft as "a fraud committed or attempted using the

identifying information of another person without authority."  17 C.F.R. § 248.201.

94.     The link between a data breach and the risk of identity theft is simple and well established.  Criminals acquire and steal Private Information to monetize the data by selling it on the internet black market to other criminals, who then utilize it to commit a variety of identity theft related crimes discussed below. Thus, unauthorized actors can, and will, now easily access and misuse Plaintiff's and Class Members' Private Information due to the Data Breach.

95.     The dark web is an unindexed layer of the internet that requires special software or authentication to access.   Criminals in particular favor the dark web as it offers a degree of anonymity to visitors and website publishers.  Unlike the traditional or "surface" web, dark web users need to know the web address of the website they wish to visit in advance.  For example, on the surface web, the CIA's web address is cia.gov, but on the dark web the CIA's web address is ciadotgov4sjwlzihbbgxnqg3xiyrg7so2r2o3lt5wz5ypk4sxyjstad.onion.   This prevents dark web marketplaces from being easily monitored by authorities or accessed by those not in the know.

96.     A sophisticated black market exists on the dark web where criminals can buy or sell malware, firearms, drugs, and frequently, PII like the Private Information at issue here.   The digital character of information stolen in data breaches lends itself to dark web transactions because it is immediately transmissible over the internet and the buyer and seller can retain their anonymity. The sale of a firearm or drugs on the other hand requires a physical delivery address.  Nefarious actors can readily purchase usernames and passwords for online streaming services, stolen financial information and account login credentials, and Social Security numbers, dates of birth, and medical information.

97.     In addition, unencrypted and detailed Private Information may fall into the hands of companies that will use it for targeted marketing without the approval of Plaintiff and Class

Members.

98.     Social Security numbers in particular are among the worst kinds of personal information to have stolen because they may be put to numerous serious fraudulent uses and are difficult for an individual to change.  The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[15]

99.     What's more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse.  In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

100.    Even then, new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[16]

101.    Identity thieves can also use Social Security numbers to obtain a driver's license or

---

[15] Social Security Administration, *Identity Theft and Your Social Security Number*, available at: https://www.ssa.gov/pubs/EN-05-10064.pdf.

[16] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited Jun. 12, 2025).

official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant issued in the victim's name. And the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for credit lines.[17]

102.   Further, because a person's identity is akin to a puzzle with multiple data points, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or to track the victim to attempt other hacking crimes against the individual to obtain more data to perfect a crime.

103.   For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate and trick individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails. Data breaches are often the starting point for these additional targeted attacks on the victims.

104.   One such example of criminals piecing together bits and pieces of compromised Private Information for profit is the development of "Fullz" packages.[18]

---

[17] *Identity Theft and Your Social Security Number*, Social Security Administration, 1 (2018), available at https://www.ssa.gov/pubs/EN-05-10064.pdf.

[18] Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off those credentials. Fullz are usually pricier than standard credit card credentials,

105.    With "Fullz" packages, cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals.

106.    The development of "Fullz" packages means here that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers.  In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information that was exfiltrated in the Data Breach, criminals can still easily create a Fullz package and sell it at a higher price to unscrupulous operators (such as illegal and scam telemarketers) and other nefarious actors over and over.  That is exactly what is happening to Plaintiff and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that their stolen Private Information is being misused, and that such misuse is traceable to the Data Breach.

107.    Bad actors can also use the Private Information stolen in this Data Breach to access a victim's financial accounts.  Identity thieves can impersonate victims by using call spoofing services to falsify information transmitted to a call recipient's caller ID, disguising the identity thief's phone number as the victim's.  If the bad actor knows what bank or credit card company

---

commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See*, *e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecuritv.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm.

the victim uses, it can use spoofing to call the victim's financial institution while masquerading as the victim's phone number to the financial institution's caller ID, using other Private Information about the victim (like the victim's Social Security number) to falsely verify the victim's identity if prompted.  Posing as the victim during such calls, identity thieves can obtain information like the victim's account number from the financial institution, or change the victim's online banking or credit card account login information.

108.    Even if an identity thief does not know what bank or credit card company the victim uses, the Private Information stolen in the Data Breach can be used to obtain that information.  For example, with the Private Information taken in this Data Breach—name, date of birth, address, contact information, and Social Security number—a fraudster can obtain the victim's free consumer disclosure report from a credit reporting agency.  These consumer disclosure reports list information about the consumer's financial accounts, including bank addresses, routing numbers, and partial bank account numbers.

109.    Similarly, identity thieves can use a victim's name, date of birth, address, contact information, and Social Security number—all Private Information stolen in this Data Breach—to obtain a free copy of the victim's credit report, which contains information like the victim's credit card accounts (with partial card numbers) and banking institutions, as well as additional information about the victim like account balances and previous addresses.

110.    Thus, even if a victim's bank account or credit card information was not compromised in this Data Breach, it is entirely possible for bad actors to use the Private Information obtained about Plaintiff and Class Members to perpetrate bank or credit card fraud against them.

111.    Victims of identity theft can suffer from both direct and indirect financial losses.

According to a research study published by the Department of Justice,

> A direct financial loss is the monetary amount the offender obtained from misusing the victim's account or personal information, including the estimated value of goods, services, or cash obtained. It includes both out-of-pocket loss and any losses that were reimbursed to the victim. An indirect loss includes any other monetary cost caused by the identity theft, such as legal fees, bounced checks, and other miscellaneous expenses that are not reimbursed (e.g., postage, phone calls, or notary fees). All indirect losses are included in the calculation of out-of-pocket loss.[19]

112.    According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $3.5 billion in losses to individuals and business victims.[20]

113.    Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

114.    In addition to out-of-pocket expenses that can exceed thousands of dollars and the emotional toll identity theft can take, some victims must spend a considerable time repairing the damage caused by the theft of their Private Information.  Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

115.    Further complicating the issues faced by victims of identity theft, data thieves may wait years before using stolen Private Information.  To protect themselves, Plaintiff and Class Members will need to remain vigilant for years or even decades to come.

---

[19] Erika Harrell, *Bureau of Just. Stat.*, U.S. DEP'T OF JUST., NCJ 256085, *Victims of Identity Theft*, 2018 I (2020) https://bjs.ojp.gov/content/pub/pdf/vit18.pdf.
[20] *See* https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120.

### *Loss of Time to Mitigate the Risk of Identify Theft and Fraud*

116.    As a result of the recognized risk of identity theft, when a data breach occurs, and an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud.  Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm—yet the asset of time has been lost.

117.    In the likely event that Plaintiff and Class Members experience actual identity theft and fraud, the United States Government Accountability Office released a report in 2007 regarding data breaches in which it noted that victims of identity theft will face substantial costs and time to repair the damage to their good name and credit record.

118.    Thus, due to the actual and imminent risk of identity theft, Plaintiff and Class Members must monitor their financial accounts for many years to mitigate that harm.

119.    Plaintiff and Class Members have spent time, and will spend additional time in the future, on a variety of prudent actions, such as placing "freezes" and "alerts" with credit reporting agencies, contacting financial institutions, closing or modifying financial accounts, changing passwords, reviewing and monitoring credit reports and accounts for unauthorized activity, and filing police reports, which may take years to discover.

120.    These efforts are consistent with the steps that FTC recommends that data breach victims take several steps to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on

their credit, and correcting their credit reports.[21]

121.    Once Private Information is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or contained against future misuse.  For this reason, Plaintiff and Class Members will need to maintain these heightened measures for years, and possibly their entire lives, due to Defendant's conduct and the resulting Data Breach.

### Diminished Value of Private Information

122.    Private Information is a valuable property right.  Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences.  Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

123.    For example, drug and medical device manufacturers, pharmacies, hospitals, and other healthcare service providers often purchase Private Information on the black market for the purpose of target-marketing their products and services to the physical maladies of the data breach victims themselves.  Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

124.    Private Information can sell for hundreds of dollars per record on the dark web.[22]

125.    An active and robust legitimate marketplace for Private Information also exists.  In 2019, the data brokering industry was worth roughly $200 billion.   In fact, consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.   Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50 a year.[23]

---

[21] *See* FTC, *Identity Theft.gov*, https://www.identitytheft.gov/Steps (last visited Jun. 12, 2025).
[22] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/.
[23]  Nielsen Computer & Mobile Panel, Frequently Asked Questions, available at

126.    As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished in its value by its unauthorized and likely release onto the dark web, where holds significant value for threat actors.  Thus, Plaintiff and Class Members have been deprived of the opportunity to use or profit from their own Private Information as they choose.

127.    However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss.  Moreover, the Private Information is now readily available, and the rarity of the data has been lost, thereby causing additional diminution of value.

### *Reasonable and Necessary Future Costs of Credit and Identify Theft Monitoring*

128.    To date, Defendant has done little to provide Plaintiff and Class Members with relief for the damages they have suffered and will continue to suffer for years due to the Data Breach.

129.    Given the type of Private Information involved in this Data Breach, and the *modus operandi* of cybercriminals, there is a strong probability that entire batches of stolen Private Information have been or will be further disseminated on the black market/dark web for sale and purchase by bad actors intending to utilize it for identity theft crimes—*e.g.*, opening bank and other accounts in the victims' names to make purchases or to launder money, filing false tax returns, taking out loans or lines of credit, or filing false unemployment claims.

130.    Such fraud may go undetected until debt collection calls commence months, or even years, later.  An individual may not know that his or her Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the

---

https://computermobilepanel.nielsen.com/ui/US/en/faqen.html.

suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

131.    The Private Information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer breach, where victims can easily cancel or close accounts. The Private Information disclosed in this Data Breach is impossible to "close" and difficult, if not impossible, to change (such as Social Security numbers).

132.    Consequently, Plaintiff and Class Members are at a present and ongoing risk of fraud and identity theft for many years into the future, if not forever.

133.    The retail cost of credit monitoring and identity theft monitoring can cost $200 or more a year per Class Member. This is a reasonable and necessary cost to protect Class Members from the risk of identity theft that arose from Defendant's Data Breach. This is a future cost for a minimum of five years that Plaintiff and Class Members would not need to bear but for Defendant's failure to safeguard their Private Information.

### *Lost Benefit of the Bargain*

134.    Furthermore, Defendant's poor data security deprived Plaintiff and Class Members of the benefit of their bargain.

135.    When agreeing to provide their Private Information (which was a condition precedent to obtain employment from Defendant and its related entities), Plaintiff and Class Members as employees understood and expected that Defendant would protect the Private Information they were required to provide.

136.    In fact, Defendant did not provide the expected and bargained-for data security. Accordingly, Plaintiff and Class Members received employment of a lesser value than what they reasonably expected to receive under the bargains struck with Defendant.

## V.    PLAINTIFF'S EXPERIENCES AND INJURIES

137.    Plaintiff is a former employee of Defendant's related entity, Blox Digital. To receive employment from Defendant's related entity, Plaintiff was required to indirectly supply Defendant with his Private Information, including his name, Social Security number, and other sensitive information.

138.    Plaintiff greatly values his privacy and is very careful about sharing his sensitive Private Information.  Plaintiff diligently protects his Private Information and stores any documents containing Private Information in a safe and secure location.  He has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

139.    Plaintiff would not have provided his Private Information to Defendant had he known it would be kept using inadequate data security and vulnerable to a cyberattack.

140.    At the time of the Data Breach—in or around February 1, 2025 —Defendant retained Plaintiff's Private Information in its network systems with inadequate data security, causing Plaintiff's Private Information to be accessed and exfiltrated by hackers in the Data Breach.

141.    Plaintiff has made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud.  Plaintiff now monitors his financial and credit statements multiple times a week and has spent hours dealing with the Data Breach, valuable time he otherwise would have spent on other activities.

142.    Plaintiff further anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. Due to the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for

years to come.

143.    The risk of identity theft is impending and has materialized, as Plaintiff's and Class

Members' Private Information was targeted, accessed, misused, and likely disseminated on the

dark web.

144.    The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress about his

Private Information now being in the hands of cybercriminals, which has been compounded by the

fact that Defendant still has not fully informed him of key details about the Data Breach's

occurrence or the information stolen.

145.    Moreover, since the Data Breach, Plaintiff has experienced suspicious spam calls

and texts using his compromised Private Information, and believes this to be an attempt to secure

additional information from or about her.

## VI.    CLASS ACTION ALLEGATIONS

146.    Plaintiff brings this nationwide class action on behalf of himself and all others

similarly situated pursuant to Federal Rule of Civil Procedure 23(b)(2), 23(b)(3), and 23(c)(4).

147.    Plaintiff proposes the following nationwide class definition, subject to amendment

based on information obtained through discovery:

> All persons in the United States whose Private Information was
> compromised in the Data Breach, including all persons who
> received a Notice Letter ("Class").

148.    Excluded from the Class are the following individuals and/or entities: Defendant

and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which any

Defendant has a controlling interest; all individuals who make a timely election to be excluded

from this proceeding using the correct protocol for opting out; any and all federal, state or local

governments, including but not limited to their departments, agencies, divisions, bureaus, boards,

sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

149.    Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

150.    **Numerosity:** The Class is so numerous that joinder of all members is impracticable. According to the Maine Attorney General, the Private Information of 39,779 individuals was compromised in the Data Breach.

151.    **Commonality:** Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These include:

a.    Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Private Information;

b.    Whether and to what extent Defendant had a duty to protect the Private Information of Plaintiff and Class Members;

c.    Whether Defendant had a duty not to disclose the Private Information of Plaintiff and Class Members to unauthorized third parties;

d.    Whether Defendant had a duty not to use the Private Information of Plaintiff and Class Members for non-business purposes;

e.    Whether Defendant knew or should have known of the data security vulnerabilities that allowed the Data Breach to occur;

f.    Whether Defendant knew or should have known of the risks to Plaintiff's and Class Members' Private Information in its custody;

g.    Whether Defendant failed to adequately safeguard the Private Information of Plaintiff and Class Members;

h. Whether Defendant's data security systems prior to, during, and since the Data Breach complied with industry standards;

i. When Defendant actually learned of the Data Breach;

j. Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members of the Data Breach or that their Private Information had been compromised;

k. Whether Defendant violated data breach notification laws by failing to promptly notify Plaintiff and Class Members that their Private Information had been compromised;

l. Whether Defendant conduct violated the FTC Act;

m. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

n. Whether Defendant adequately addressed and fixed the vulnerabilities that permitted the Data Breach to occur;

o. Whether Defendant breached contracts with its employees made for the benefit of Plaintiff and Class Members;

p. Whether Defendant was unjustly enriched by failing to provide adequate security for Plaintiff's and Class Members' Private Information;

q. Whether Plaintiff and Class Members are entitled to actual, consequential, nominal, and/or punitive damages as a result of Defendant's wrongful conduct;

r. Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

s. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm the Data Breach caused.

152.    **Typicality:** As to the Class, Plaintiff's claims are typical of other Class Members' claims because Plaintiff and Class Members were subject to the same unlawful conduct as alleged herein, and were damaged in the same way. Plaintiff's Private Information was in Defendant's possession at the time of the Data Breach and was compromised due to the Data Breach. Plaintiff's damages and injuries are akin to those of other Class Members and Plaintiff seeks relief consistent with the relief of the Class.

153.    **Adequacy:** Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Defendant to obtain relief for the Class. Plaintiff has no conflict of interest with the Class. Plaintiff's Counsel are competent and experienced in litigating class actions, including extensive experience in data breach and privacy litigation. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the interests of all the Class.

154.    **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to Plaintiff and Class Members may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and Class Members are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Individual litigation by each Class Member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single

adjudication, economies of scale, and comprehensive supervision by a single court.

155.    **Manageability:** The litigation of the class claims alleged herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates there would be no significant manageability problems with prosecuting this lawsuit as a class action.  Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

156.    **Ascertainability:** All members of the proposed Class are readily ascertainable. The Class is defined by reference to objective criteria, and there is an administratively feasible mechanism to determine who fits within the Class.  Defendant has access to information regarding the individuals affected by the Data Breach, and has already provided notifications to some or all of those people.  Using this information, the members of the Class can be identified, and their contact information ascertained for purposes of providing notice.

157.    **Particular Issues:** Particular issues are appropriate for certification under Rule 23(c)(4) because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to the following:

a.   Whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

b.   Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

c.   Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d.   Whether a contract existed between Defendant and its employees  made for the benefit

of Plaintiff and Class Members, and the terms of that contract;

e.  Whether Defendant breached the contract;

f.  Whether Defendant adequately and accurately informed Plaintiff and Class Members
their Private Information had been compromised;

g.  Whether Defendant failed to implement and maintain reasonable security procedures
and practices appropriate to the nature and scope of the information compromised in
the Data Breach;

h.  Whether Defendant engaged in unfair, unlawful, or deceptive practices by
misrepresenting its data security processes and vulnerabilities;

i.  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to
safeguard the Private Information of Plaintiff and Class Members; and

j.  Whether Class Members are entitled to actual, consequential, and/or nominal damages,
and/or injunctive relief due to Defendant's wrongful conduct.

158.    **Policies Generally Applicable to the Class:** Finally, class certification is also
appropriate under Rule 23(b)(2) and (c).  The Class is also appropriate for certification because
Defendant has acted or refused to act on grounds generally applicable to the Class, thereby
requiring the Court's imposition of uniform relief to ensure compatible standards of conduct
toward Class Members and making final injunctive relief appropriate with respect to each of the
Class as a whole. Defendant's policies challenged herein apply to and affect Class Members
uniformly, and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect
to the Class as a whole, not on facts or law applicable only to Plaintiff.

159.    Defendant, through uniform conduct, acted or refused to act on grounds generally
applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class

as a whole, including without limitation the following:

    a.  Ordering Defendant to provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

    b.  Ordering that, to comply with Defendant explicit or implicit contractual obligations and duties of care, Defendant must implement and maintain reasonable security and monitoring measures, including, but not limited to the following:

        (i)    prohibiting Defendant from engaging in the wrongful and unlawful acts alleged herein;

        (ii)   requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

        (iii)  requiring Defendant to delete and purge the Private Information of Plaintiff and Class Members unless it can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

        (iv)  requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiff's and Class Members' Private Information;

        (v)   requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis;

        (vi)  prohibiting Defendant from maintaining Private Information on a cloud-based database until proper safeguards and processes are implemented;

(vii)    requiring Defendant to segment data by creating firewalls and access controls so that, if one area of its network is compromised, hackers cannot gain access to other portions of Defendant's systems;

(viii)    requiring Defendant to conduct regular database scanning and securing checks;

(ix)    requiring Defendant to monitor ingress and egress of all network traffic;

(x)    requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling Private Information, as well as protecting the Private Information of Plaintiff and Class Members;

(xi)    requiring Defendant to implement, maintain, review, and revise as necessary a threat management program to appropriately monitor its networks for internal and external threats, and assess whether monitoring tools are properly configured, tested, and updated;

(xii)    requiring Defendant to meaningfully educate all Class Members about the threats that they because of the loss of their confidential Private Information to third parties, as well as the steps affected individuals must take to protect themselves; and

(xiii)    Incidental retrospective relief, including but not limited to restitution.

## VII.    CAUSES OF ACTION

### COUNT I: NEGLIGENCE/NEGLIGENCE *PER SE*
#### (On behalf of Plaintiff and the Class)

160.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 159 above as if fully set forth herein.

161.    Plaintiff and Class Members provided their Private Information to Defendant as a condition of employment.

162.    Defendant had full knowledge of the sensitivity of the Private Information to which it was entrusted, and the types of harm that Plaintiff and Class Members could and would suffer if the Private Information was wrongfully disclosed to unauthorized persons.

163.    Defendant owed a duty to Plaintiff and each Class Member to exercise reasonable care in holding, safeguarding, and protecting the Private Information it collected from them.

164.    Plaintiff and Class Members were the foreseeable victims of any inadequate data safety and security practices by Defendant.

165.    Plaintiff and the Class Members had no ability to protect their Private Information in Defendant's possession.

166.    By collecting, transmitting, and storing Plaintiff's and Class Members' Private Information Defendant owed Plaintiff and Class Members a duty of care to use reasonable means to secure and safeguard their Private Information, to prevent the information's unauthorized disclosure, and to safeguard it from theft or exfiltration to cybercriminals. Defendant's duty included the responsibility to implement processes by which it could detect and identify malicious activity or unauthorized access on its networks or servers.

167.    Defendant owed a duty of care to Plaintiff and the Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that controls for its networks, servers, and systems, and the personnel responsible for them, adequately protected Plaintiff's and Class Members' Private Information.  This duty included the responsibility to train Defendant's employees to recognize and prevent attempts to gain initial unauthorized access through common techniques like phishing.

168.    Defendant's duty to use reasonable security measures arose because of the special relationship that existed between it and its employees, which is recognized by laws and regulations including but not limited to the FTC Act, as well as the common law. Defendant was able to ensure its network servers and systems were sufficiently protected against the foreseeable harm a data breach would cause Plaintiff and Class Members, yet it failed to do so.

169.    In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

170.    Pursuant to the FTC Act, 15 U.S.C. § 45 *et seq.*, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

171.    Defendant breached its duty to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

172.    The injuries to Plaintiff and Class Members resulting from the Data Breach were directly and indirectly caused by Defendant's violation of the FTC Act.

173.    Plaintiff and Class Members are within the class of persons the FTC Act is intended to protect.

174.    The type of harm that resulted from the Data Breach was the type of harm the FTC Act is intended to guard against.

175.    Defendant's failure to comply with the FTC Act constitutes negligence *per se.*

176.    Defendant's duty to use reasonable care in protecting Plaintiff's and Class

Members' confidential Private Information in its possession arose not only because of the statutes and regulations described above, but also because Defendant is bound by industry standards to reasonably protect such Private Information.

177.    Defendant breached its duties of care, and was grossly negligent, by acts of omission or commission, including by failing to use reasonable measures or even minimally reasonable measures to protect the Plaintiff's and Class Members' Private Information from unauthorized disclosure in this Data Breach.

178.    The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' Private Information;

b.  Maintaining and/or transmitting Plaintiff's and Class Members' Private Information in unencrypted and identifiable form;

c.  Failing to implement data security measures, like adequate MFA for as many systems as possible, to safeguard against known techniques for initial unauthorized access to network servers and systems;

d.  Failing to adequately train employees on proper cybersecurity protocols;

e.  Failing to adequately monitor the security of their networks and systems;

f.  Failure to periodically ensure that their network system had plans in place to maintain reasonable data security safeguards;

g.  Allowing unauthorized access to Plaintiff's and Class Members' Private Information; and

h.  Failing to timely or adequately notify Plaintiff and Class Members about the Data

Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

179.    But for Defendant's wrongful and negligent breaches of its duties owed to Plaintiff and Class Members, their Private Information would not have been compromised because the malicious activity would have been identified and stopped before hackers had a chance to inventory Defendant's digital assets, stage them, and then exfiltrate them.

180.    It was foreseeable that Defendant's failures to use reasonable measures to protect Plaintiff's and Class Members' Private Information would result in injury to Plaintiff and Class Members.  Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in Defendant's industry.

181.    It was therefore foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' Private Information would cause them one or more types of injuries.

182.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer injuries, including but not limited to (a) invasion of privacy; (b) lost or diminished value of their Private Information; (c) actual identity theft, or the imminent and substantial risk of identity theft or fraud; (d) out-of-pocket and lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (e) loss of benefit of the bargain; (f) anxiety and emotional harm due to their Private Information's disclosure to cybercriminals; and (g) the continued and certainly increased risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect it.

183.    Plaintiff and Class Members are entitled to damages, including compensatory,

consequential, punitive, and nominal damages, in an amount to be proven at trial.

184.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (a) strengthen its data security systems and monitoring procedures; (b) submit to future annual audits of those systems and monitoring procedures; and (c) provide adequate and lifetime credit monitoring to Plaintiff and all Class Members.

## COUNT II: BREACH OF IMPLIED CONTRACT
### (On behalf of Plaintiff and the Class)

185.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 159 above as if fully set forth herein.

186.    Plaintiff and Class Members were required to provide their Private Information to Defendant as a condition of receiving employment from Defendant and its related entities.

187.    Plaintiff and the Class entrusted their Private Information to Defendant. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

188.    In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

189.    Implicit in the agreement between Plaintiff and Class Members and the Defendant to provide Private Information, was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private

Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses, (f) retain the Private Information only under conditions that kept such information secure and confidential.

190.    The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendant, on the other, is demonstrated by their conduct and course of dealing.

191.    Defendant solicited, offered, and invited Plaintiff and Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

192.    In accepting the Private Information of Plaintiff and Class Members, Defendant understood and agreed that it was required to reasonably safeguard the Private Information from unauthorized access or disclosure.

193.    224. On information and belief, at all relevant times Defendant promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiff and Class Members that it would only disclose Private Information under certain circumstances, none of which relate to the Data Breach.

194.    On information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' Private Information would remain protected.

195.    Plaintiff and Class Members obtained employment with Defendant with the reasonable belief and expectation that Defendant would use part of its earnings to obtain adequate data security. Defendant failed to do so.

196.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their

information reasonably secure.

197.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures.

198.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

199.    Defendant breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their personal information, by failing to delete the information of Plaintiff and the Class once the relationship ended, and by failing to provide accurate notice to them that personal information was compromised as a result of the Data Breach.

200.    As a direct and proximate result of Defendant's breach of the implied contracts, Plaintiff and Class Members sustained damages, as alleged herein, including the loss of the benefit of the bargain.

201.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

202.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members

### COUNT III: INVASION OF PRIVACY/INSTRUSION UPON SECLUSION
#### (On behalf of Plaintiff and the Class)

203.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 159 above as if fully set forth herein.

204.    Plaintiff and Class Members had a legitimate expectation of privacy to their Private

Information and were entitled to Defendant's protection of this Private Information in its possession against disclosure to unauthorized third parties.

205.     Defendant owed a duty to its employees, including Plaintiff and Class Members, to keep their Private Information confidential and secure.

206.     Defendant failed to protect Plaintiff's and Class Members' Private Information and instead exposed it to unauthorized third-party hackers.

207.     Defendant allowed unauthorized third parties access to and examination of the Private Information of Plaintiff and Class Members, by way of Defendant's failure to protect the Private Information through reasonable data security measures.

208.     The unauthorized release to, custody of, and examination by unauthorized third parties of the Private Information of Plaintiff and Class Members is highly offensive to a reasonable person and represents an intrusion upon Plaintiff's and Class Members' seclusion as well as a public disclosure of private facts.

209.     The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiff and Class Members disclosed their Private Information to Defendant as a condition of and in exchange for receiving internet reservation services, but privately with an intention that the Private Information would be kept confidential and protected from unauthorized disclosure. Plaintiff and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

210.     Subsequent to the intrusion, Defendant permitted Plaintiff's and Class Members' data to be published online to countless cybercriminals whose mission is to misuse such information, including through identity theft and extortion.

211.     The Data Breach constitutes an intentional or reckless interference by Defendant

with Plaintiff's and Class Members' interests in solitude or seclusion, as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

212.    Defendant acted with a knowing state of mind when it permitted the Data Breach to occur, because it had actual knowledge that its information security practices were inadequate and insufficient to protect Plaintiff's and Class Members' Private Information from unauthorized disclosure.

213.    Defendant acted with reckless disregard for Plaintiff's and Class Members' privacy when it allowed improper access to its systems containing Plaintiff's and Class Members' Private Information without protecting said data from the unauthorized disclosure, or even encrypting such information.

214.    Defendant was aware of the potential of a data breach and failed to adequately safeguard its network systems or implement appropriate policies to prevent the unauthorized release of Plaintiff's and Class Members' Private Information to cybercriminals.

215.    Because Defendant acted with this knowing state of mind, it had notice and knew that its inadequate and insufficient information security practices would cause injury and harm to Plaintiff and Class Members.

216.    As a direct and proximate result of Defendant's acts and omissions set forth above, Plaintiff's and Class Members' Private Information was disclosed to third parties without authorization, causing Plaintiff and Class Members to suffer injuries and damages including, without limitation, (a) invasion of privacy; (b) lost or diminished value of their Private Information; (c) out-of-pocket and lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (d) loss of benefit of the bargain; and (e) the continued and certainly increased risk to their Private

Information, which remains in Defendant's possession in unencrypted form and subject to further unauthorized disclosures, so long as Defendant fails to undertake appropriate and adequate measures to protect it.

217.    Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that the Private Information maintained by Defendant can be viewed, distributed, and used by unauthorized persons for years to come.  Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members.

### COUNT IV: UNJUST ENRICHMENT
### (On behalf of Plaintiff and the Class)

218.    Plaintiff re-alleges and incorporates by reference paragraphs 1 throug159 above as if fully set forth herein.

219.    This count is brought in the alternative to Plaintiff's breach of third-party beneficiary claim.

220.    Plaintiff and Class Members conferred a monetary benefit on Defendant; specifically, they provided their Private Information to Defendant or its related entities to obtain employment.

221.    The monies Defendant was paid in its ordinary course of business included a premium for Defendant's cybersecurity obligations and were supposed to be used by Defendant, in part, to pay for the administrative and other costs of providing reasonable data security and protection for Plaintiff's and Class Members' Private Information.

222.    Defendant knew that Plaintiff and Class Members conferred a benefit upon it and accepted and retained that benefit by accepting and retaining the Private Information entrusted to

it. Defendant profited from Plaintiff's retained data and used Plaintiff's and Class Members'
Private Information for business purposes.

223.    Defendant enriched itself by hoarding the costs it reasonably should have expended
on data security measures to secure Plaintiff's and Class Members' Private Information. Instead
of providing a reasonable level of security that would have prevented the Data Breach, Defendant
calculated to increase its own profit at the expense of Plaintiff and Class Members by utilizing
cheap, ineffective security measures and diverting those funds to its own personal use. Plaintiff
and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's
decision to prioritize its own profits over the requisite security and the safety of their Private
Information.

224.    Defendant failed to provide reasonable security, safeguards, and protections to the
Private Information of Plaintiff and Class Members, and as a result, Defendant was overpaid.

225.    Under principles of equity and good conscience, Defendant should not be permitted
to retain any of the benefits that Plaintiff and Class Members conferred upon it.

226.    Plaintiff and Class Members have no adequate remedy at law.

227.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class
Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy;
(ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated
with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the
bargain; (v) an increase in spam calls, texts, and/or emails; and (vi) the continued and certainly
increased risk to their Private Information, which: (a) remains unencrypted and available for
unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's
possession and is subject to further unauthorized disclosures so long as Defendant fails to

undertake appropriate and adequate measures to protect the Private Information.

228.    Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which Plaintiff and Class Members may seek restitution or compensation.

## VIII.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Anthony Bangert, individually and on behalf of all others similarly situated, prays for judgment as follows:

A.    An Order certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B.    Awarding Plaintiff and the Class damages that include applicable compensatory, actual, nominal, exemplary, and punitive damages, as allowed by law;

C.    Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

D.    Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

E.    Awarding injunctive relief in the form of additional technical and administrative cybersecurity controls as is necessary to protect the interests of Plaintiff and the Class;

F.    Awarding prejudgment and post-judgment interest, as provided by law; and

G.    Awarding such further relief to which Plaintiff and the Class are entitled.

## IX.    DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues to triable.

Dated: June 13, 2025                        Respectfully submitted,

/s/ J. Barton Goplerud
**J. Barton Goplerud, AT0002983**
**Brian O. Marty, AT0011622**
SHINDLER ANDERSON GOPLERUD &
WEESE P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265-5749
Telephone:      (515) 223-4567
Facsimile:      (515) 223-8887
Email:  goplerud@sagwlaw.com
            marty@sagwlaw.com

Jeff Ostrow (*pro hac vice* forthcoming)
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd, Suite 500
Fort Lauderdale, FL 33301
Tel: (954) 525-3200
ostrow@kolawyers.com

*Counsel for Plaintiff and the Putative Class*